UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| GEOVERA SPECIALTY INSURANCE COMPANY | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-1899 |
| MICHAEL ODOMS | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion by plaintiff GeoVera Specialty Insurance Company ("GeoVera") for summary judgment declaring that: (1) under the homeowners insurance policy's concealment or fraud exclusion, no coverage is owed for a fire; and (2) GeoVera may rescind the policy due to material misrepresentations in the insurance application.[1] Defendant Michael Odoms opposes the motion,[2] and GeoVera replies in further support of the motion.[3] Having consider the parties' memoranda, the record, and the applicable law, the Court finds that GeoVera is entitled to summary judgment.[4]

**I.    BACKGROUND**

This matter is a declaratory judgment action concerning the rescission of a homeowners insurance policy. On June 21, 2018, Odoms entered into an agreement to purchase a property located at 6565 Benedict Drive in Marrero, Louisiana.[5] As a result, Odoms contacted Susan Angelica Insurance Agency, LLC ("SAIA") to procure a tenant-occupied homeowners insurance

---

[1] R. Doc. 16.
[2] R. Doc. 19.
[3] R. Doc. 25.
[4] Odoms filed a parallel lawsuit, *Michael Odoms, et al. v. GeoVera Specialty Insurance Company, et al.*, C/A No. 19-12477 (E.D. La.), in state court, which GeoVera removed to this Court. Odoms filed a motion dismiss or, alternatively, stay this matter pending the resolution of what he assumed would be a state court case arguing that this Court should defer to the state court. R. Doc. 20. Because this Court recently denied Odoms's motion to remand the other case, the motion to dismiss, or alternatively stay, is DENIED as moot.
[5] R. Doc. 1 at 2.

policy for the property.[6] According to Odoms, SAIA responded to some of the underwriting questions without consulting him when filling out the insurance application.[7] All of the underwriting questions were answered in the negative, including one inquiring whether the "applicant, co-applicant, spouse or domestic partner had or been involved in a … bankruptcy during the past 5 years," and one asking if the property was "without public utility services."[8] Odoms signed the insurance application on June 21, 2018, thus acknowledging that he had "read the above application and any attachments and declare[d] that the information is true and complete" and that the "information [was] being offered to the company as an inducement to issue the policy for which [he was] applying."[9]

Based on Odoms's answers to underwriting questions posed in the insurance application, GeoVera issued a tenant-occupied homeowners insurance policy for the Benedict Drive property for the term of June 21, 2018 to June 21, 2019.[10] The policy provided dwelling coverage in the amount of $129,000, along with coverage limits of $12,900 for other structures, $6,450 for personal property, and $12,900 for loss of use.[11] The policy contains a "concealment or fraud" clause which provides:

> 1. With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after the loss, has:

---

[6] R. Doc. 19-2 at 1. This document is Odoms's affidavit, which GeoVera has moved to strike arguing that it is a sham affidavit that contains statements contradicting testimony Odoms gave under oath at his examination under oath ("EUO"). R. Doc. 23. The Court finds that GeoVera is entitled to summary judgment even if the affidavit is considered; therefore, the motion to strike is DENIED. However, where the affidavit and Odoms's EUO testimony conflict, the Court may disregard the affidavit in favor of the sworn testimony. *See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (an affidavit impeaching earlier sworn testimony of affiant, without explanation, cannot create a fact issue); *Dekelaita v. BP Amoco Chem. Co.*, 2008 WL 2964376, at *10-11 (S.D. Tex. July 30, 2008) (court has discretion to ignore affidavit in unexplained conflict with affiant's prior sworn testimony).
[7] R. Doc. 19-2 at 2.
[8] R. Doc. 16-2 at 7.
[9] *Id.* at 8.
[10] R. Doc. 1 at 7.
[11] R. Doc. 16-2 at 10.

     a. Intentionally concealed or misrepresented any material fact or circumstance;

     b. Engaged in fraudulent conduct; or

     c. Made false statements;

     relating to this insurance.

…

3. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.[12]

On July 21, 2018, the Benedict Drive property was damaged by a fire.[13] Odoms promptly filed a claim with GeoVera.[14] GeoVera required Odoms to provide sworn testimony at two examinations under oath ("EUO").[15]

At the December 19, 2018 EUO, Odoms testified that he and his wife, Ericka Odoms ("Ericka") began dating in 2008 or 2009 and married in October 2013.[16] The examiner asked Odoms questions about several insurance applications he and Ericka made with GeoVera through SAIA, including the one for the Benedict Drive property.[17] The insurance application for a property located at 1929 Watling Drive, which Odoms signed on August 22, 2016, was the first of the series.[18] Odoms testified that he participated in applying for the insurance, SAIA explained the underwriting questions to him, he answered the underwriting questions, and he signed the application.[19] With respect to the bankruptcy question, Odoms testified that he was aware that Ericka was making payments on debts related to a bankruptcy until October 2015, and

---

[12] R. Docs. 1 at 8; 16-2 at 68.
[13] R. Doc. 1 at 2.
[14] *Id.* at 3.
[15] *Id.*
[16] R. Doc. 1-5 at 2.
[17] *Id.* at 3.
[18] *Id.* at 3-9.
[19] *Id.* at 3-4.

3

that answering "no" to the bankruptcy underwriting question was incorrect.[20] Indeed, Odoms acknowledged that the bankruptcy underwriting question was incorrectly answered in the negative on all seven insurance applications that were discussed in the EUO, including the insurance application for the Benedict Drive property.[21] Odoms further testified that he had no reason to believe that SAIA made up the answers to the underwriting questions and that, if he signed the application, he provided the answers to the best of his ability.[22]

GeoVera also required Ericka to attend an EUO. At her EUO, Ericka testified that Odoms was aware of her bankruptcy.[23] She further testified that the bankruptcy underwriting question was answered incorrectly on all the insurance applications, including the one for the Benedict Drive property.[24]

On February 26, 2019, GeoVera wrote to Odoms informing him that it "has determined it has no duty to indemnify" Odoms because he submitted false answers to the underwriting questions on the insurance application.[25] GeoVera noted that Odoms and Ericka submitted several insurance applications in which one, or both, of them affirmed that neither of them was "involved in" a bankruptcy proceeding in the previous five years, when in fact, they both knew that Ericka was making payments on a bankruptcy plan until October 2015.[26] Further, GeoVera stated that Odoms falsely represented that the property was connected to public utilities, when in fact, the property did not have water or gas, and the electricity was obtained via an illegal meter

---

[20] *Id.* at 4-5.
[21] *Id.* at 5-8.
[22] *Id.* at 8.
[23] R. Doc. 1-7 at 5.
[24] *Id.* at 5-8.
[25] R. Doc. 16-2 at 100-04.
[26] *Id.* at 101.

attached by the squatters who previously occupied the property.[27] Thus, GeoVera denied coverage under the "concealment or fraud" clause which provides that the insurer does not provide coverage to an insured who made false statements related to the insurance, whether before or after the loss.[28] GeoVera further stated that it would not have issued the policy if Odoms had provided accurate information in the insurance application.[29]

On March 1, 2019, GeoVera filed this declaratory judgment action against Odoms. GeoVera seeks a declaration: (1) that Odoms provided false information in the insurance application, and (2) allowing rescission of the insurance policy based on the false statements contained in the insurance application.[30]

## II. PENDING MOTION

GeoVera moves for summary judgment arguing that the undisputed evidence proves that Odoms made materially false statements in his insurance application with respect to the underwriting questions about his wife's bankruptcy and whether the property had public utilities, and that, as a result, GeoVera is entitled to rescind the policy.[31] GeoVera further argues that the false statements are attributable to Odoms, regardless of who completed the application, because Odoms signed the application attesting that the answers were true.[32] GeoVera contends that Odoms's false answers to these two questions materially affected GeoVera's decision to issue the policy because it would not have done so if the questions were answered in the affirmative.[33]

---

[27] *Id.*
[28] *Id.* at 102-03.
[29] *Id.* at 104.
[30] R. Doc. 1.
[31] R. Doc. 16-1 at 10-11.
[32] *Id.* at 14-16.
[33] *Id.* at 16-18.

5

Odoms opposes the motion arguing that there are disputed issues of fact regarding whether he made any material misrepresentations in the insurance application.[34] Odoms contends that, although he knew that his wife was making payments on a bankruptcy plan until October 2015, he did not believe that constituted involvement with a bankruptcy in the last five years as asked on the application; thus, Odoms says, he did not intend to deceive the insurer.[35] With respect to the utilities underwriting question, Odoms argues that he did not know that the electricity to the property was illegally obtained when he submitted the application, and the underwriting question does not specify that the utilities must be legally obtained in order to answer in the affirmative.[36] Further, Odoms argues that he was entitled to rely on SAIA's expertise in completing the insurance application for him, and SAIA failed to interpret properly the questions and explain them to Odoms.[37]

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for

---

[34] R. Doc. 19 at 5-12.
[35] *Id.* at 7.
[36] *Id.* at 7-8.
[37] *Id.* at 8-9.

summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

7

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Rescission of an Insurance Policy

Section 22:860(A) of the Louisiana Revised Statutes provides in pertinent part:

> no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

The burden of proving that an insured made material misrepresentations sufficient to rescind the insurance policy rests on the insurer. *Kahl v. Chevalier*, 188 So. 3d 449, 455 (La. App. 2016) (citing *Abshire v. Desormeaux*, 970 So. 2d 1118, 1195 (La. App. 2007)). To void coverage due to a misrepresentation in the insurance application, the insurer must prove that: "'(1) the insured made a false statement; (2) the false statement was material; and (3) it was made with intent to deceive.'" *Id.* (quoting *Willis v. Safeway Ins. Co. of La.*, 968 So. 2d 346, 350 (La. App. 2007)). "A misrepresentation is material if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate." *Gwin v. Liberty Mut. Ins. Co.*, 2017 WL 3574443, at *5 (W.D. La. Aug. 17, 2017) (citing *Abshire*, 970 So. 2d at 1196). The

insured's intent to deceive "'is determined from circumstances indicating the insured's knowledge of the falsity of the representations made in the application.'" *Kahl*, 118 So. 3d at 455 (quoting *Burley v. New York Life Ins. Co.*, 179 So. 3d 922, 930 (La. App. 2015)).

Here, GeoVera has satisfied the test for rescinding the insurance policy. It was established at Odoms's EUO that he made a false statement on the insurance application regarding his wife's involvement in a bankruptcy in the five years preceding the application.[38] The materiality of the statement was proved by the affidavit of Joseph Belton II, GeoVera's claims manager, who declared that, under GeoVera's underwriting rules, Odoms's application for insurance on the Benedict Property would have been declined if Odoms had answered "yes" to the bankruptcy underwriting question.[39] Further, Odoms's intent to deceive was established at his EUO where he testified that, at the time he made the multiple insurance applications to GeoVera (all of which, including the one for the Benedict Drive property, indicated "no" as the response to the bankruptcy underwriting question), he knew that Ericka was actively making payments on a bankruptcy plan until October 2015, and that those responses were incorrect.[40] The fact that Odoms consistently and repeatedly provided an incorrect answer to that question on each of the applications (including those made jointly with Ericka) demonstrates his intent to deceive GeoVera. Further, at her EUO, Ericka testified Odoms knew about her bankruptcy and that the bankruptcy underwriting question was incorrectly answered in the negative on all of the insurance applications, including the one for the Benedict Drive property.[41]

---

[38] In contrast, GeoVera has not met its burden of proof that Odoms intended to deceive the insurer with respect to the public utilities question. Odoms testified at his EUO that he walked through the property and assumed that there were public utilities because he saw the electric and gas meters and the lights were on. R. Doc. 1-3 at 14. He further testified that he did not learn that the electricity was illegally obtained until after the fire. *Id.* at 42. Thus, it is not clear that, at the time Odoms signed the insurance application, he knew that the property did not have public utilities.

[39] R. Doc. 16-2 at 1-5.
[40] R. Doc. 1-5 at 8-9.
[41] R. Doc. 1-7 at 5-8.

It is immaterial that Odoms claims he relied solely upon SAIA's expertise in completing the insurance application before he signed it. Odoms attested by signing the application that he read the application and had the responsibility to ensure that the information provided therein was accurate. *Security 1st Nat'l Bank v. Progressive Cas. Ins. Co.*, 30 F.3d 1491, 1994 WL 397946, at *3 (5th Cir. July 18, 1994) (largely because insurance application was signed by insured, court rejected insured's argument that intent to deceive was not established where insurance agent had completed application containing false statements); *Sacks v. Allstate Prop. & Cas. Ins. Co.*, 2018 WL 1409269, at *3 (E.D. La. Mar. 21, 2018) ("a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that she did not read it, that she did not understand it, or that the other party failed to explain it to her") (citation and internal brackets omitted).

Odoms puts much stock in his quibble over the word "involvement" as used in the application. Odoms states in his affidavit that he would not have answered "no" to the bankruptcy question "[h]ad SAIA explained to him that his wife's participation in a payment plan set up as a result of her 2010 bankruptcy amounted to 'involvement' with a bankruptcy for the purposes of the GeoVera application."[42] This argument might have more force had Odoms bothered to tell SAIA about his wife's bankruptcy, but there is no evidence that he did. As a result of Odoms's failure to disclose this information, SAIA was never asked for, or afforded the opportunity to provide, the explanation Odoms now imagines. Thus, the evidence on this summary-judgment record is sufficient to prove Odoms's intent to deceive GeoVera.

---

[42] R. Doc. 19-2 at 3.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that GeoVera's motion for summary judgment (R. Doc. 16) is GRANTED.

IT IS FURTHER ORDERED that Odoms's motion to dismiss or, alternatively, for stay (R. Doc. 20) is DENIED as moot.

IT IS FURTHER ORDERED that GeoVera's motion to strike Odoms's affidavit (R. Doc. 23) is DENIED.

New Orleans, Louisiana, this 14th day of November, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE